UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES C. SITTS,

                                    Plaintiff,

                                                                          9:20-CV-1475
v.                                                                        (TJM/ML)

SIMONDS; CORY BENE, Officer of
Corrections; BIGGAR, Sergeant; and
GOFF, Corporal,

                                    Defendants.
_____

APPEARANCES:                                                   OF COUNSEL:

JAMES C. SITTS
   *Pro Se* Plaintiff
Greene Correctional Facility
Post Office Box 975
Coxsackie, New York 12051

OFFICE OF FRANK W. MILLER                             FRANK W. MILLER, ESQ.
   Counsel for Defendants                                     THOMAS MURPHY, ESQ.
6575 Kirkville Road
East Syracuse, New York 13057


MIROSLAV LOVRIC, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

        Currently before the Court, in this civil rights action filed by James C. Sitts ("Plaintiff")

against Simonds,[1] Cory Bene, Biggar, and Goff (collectively "Defendants"), is Defendants'

_____

[1]        Defendants' motion included a declaration by Defendant Simonds, where he repeatedly
refers to his last name as spelled "Simonds."  (Dkt. No. 43, Attach. 2 at 10.)  As a result, the
Clerk of the Court is directed to amend the docket sheet accordingly.  Any reference in the
Complaint (Dkt. No. 1) to Defendant "Simmonds" shall be deemed to refer to Defendant
"Simonds."

motion for summary judgement pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 43.)  For the reasons

set forth below, I recommend that Defendants' motion for summary judgement be granted in part

and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint asserts the following three claims:

(1) a claim that Defendants Simonds and Bene used excessive force and failed to intervene

pursuant to the Eighth or Fourteenth Amendments[2] and 42 U.S.C. § 1983; (2) a claim that

Defendant Simonds was deliberately indifferent to his medical needs pursuant to Eighth or

Fourteenth Amendments[3] and 42 U.S.C. § 1983; and (3) a claim that Defendants Biggar and

Goff retaliated against him in violation of the First Amendment and 42 U.S.C. § 1983.  (Dkt.

Nos. 1, 8.)  The Court's Decision and Order dated January 13, 2021, thoroughly outlines the

factual allegations and causes of action alleged in Plaintiff's Complaint.[4]  (Dkt. No. 8 at 4-6.)

### B.    Procedural History

On December 2, 2020, Plaintiff commenced this civil rights action by the filing of a

Complaint.  (Dkt. No. 1.)  On January 13, 2021, Senior United States District Judge Thomas J.

McAvoy issued an order that granted Plaintiff's IFP application, and—after reviewing the

---

[2]    The Court noted that "it is not clear from the [C]omplaint whether [P]laintiff was a
pretrial detainee or convicted inmate at the time of the relevant events in this action."  (Dkt. No.
8 at 6.)

[3]    *See*, *supra*, note 2.

[4]    Plaintiff also asserted a claim that Defendants Biggar and Goff interfered with his
attempts to seek redress at Delaware County Correctional Facility.  (*See generally* Dkt. No. 1.)
However, that claim was dismissed by the Court and Plaintiff did not seek leave amend that
claim.  (Dkt. No. 8 at 8.)  In addition, Plaintiff's claims against Delaware Correctional Facility
were dismissed.  (*Id*. at 9.)

Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A—permitted the action to go forward with respect to certain of Plaintiff's claims as set forth above in Part I.A. of this Order and Report-Recommendation.  (Dkt. No. 8.)

On October 12, 2021, Defendants filed the pending motion for summary judgment.  (Dkt. No. 43.)  The deadline for Plaintiff to respond to Defendants' motion was November 2, 2021. (Dkt. No. 45.)  Plaintiff did not file a response by that deadline.  (*See generally* docket sheet.) As a result, on November 10, 2021, the Court *sua sponte* extended the deadline for Plaintiff to respond to Defendants' motion until December 10, 2021.  (Dkt. No. 47.)  On December 8, 2021, Plaintiff filed a response in opposition.  (Dkt. No. 48.)

### C.     Defendants' Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Statement of Material Facts and not denied by Plaintiff in his response.  (*Compare* Dkt. No. 43, Attach. 8 [Defs.' Statement of Material Facts], *with* Dkt. No. 48 [Pl.'s Resp.].)

1.     On April 17, 2020, at the Delaware County Correctional Facility ("Delaware") in Delhi, New York, at approximately 7:30 a.m., Officer Amanda Reichert was doing a monthly blanket exchange.  Plaintiff told her that he did not need to exchange his blankets.  Officer Reichert called Defendant Simonds and told him that Plaintiff refused to exchange his blankets. After approximately twenty minutes, Plaintiff's pod was locked down.[5]

---

[5]     Defendants cite Dkt. No. 43, Attach. 1 at 6, in support of this contention.  (Dkt. No. 43, Attach. 8 at ¶ 1.)  However, the narrative portion of the incident report contained in Dkt. No 43, Attach. 1, is neither taken before a notary public nor sworn to under penalty of perjury pursuant to 28 U.S.C. § 1746.  Although the incident report may be admissible pursuant to Fed. R. Evid. 803(6), it was attached to the affidavit of defense counsel Thomas Murphy, who does not appear to possess the requisite knowledge to lay the proper foundation for application of that hearsay exception (nor does Attorney Murphy attempt to lay the proper foundation in his affidavit). (Dkt. No. 43, Attach. 7 at ¶ 6.)  As a result, Dkt. No. 43, Attach. 1, will not be considered by the Court because in its current form, it is inadmissible hearsay.  However, the sworn declarations of

2.      Defendant Simonds and other corrections officers entered Plaintiff's cell while Plaintiff was lying on his bed.  Defendant Simonds told Plaintiff to give Defendant Simonds his blankets, Plaintiff refused.  Defendant Simonds then ordered Plaintiff to give Defendant Simonds his blankets.[6]

3.      Plaintiff then got up and threw his blankets on the floor.  Plaintiff laid back down on his bed, face up.  Plaintiff was ordered to get up and hand the blankets to Defendant Simonds. Plaintiff refused and used profanity.[7]

4.      Defendant Simonds then ordered Plaintiff to lay on the ground and place his hands behind his back.  Plaintiff refused to comply.  Defendant Simonds attempted to administer a burst of OC spray at the facial area of Plaintiff but missed Plaintiff's face and instead hit his arm and the wall beside his head.  Defendant Bene was present and followed up with a burst of OC spray in Plaintiff's facial area.

5.      Plaintiff was brought to the ground with the assistance of another officer who handcuffed Plaintiff behind his back.  Plaintiff was then stood up facing the wall.  A restraint chair was brought to the unit and Plaintiff was escorted downstairs and placed in the restraint chair.

---

Corrections Officer Matthew Cammer, Corrections Officer Dennis Kilmowski, Correction Officer Bryce Kohout, Corrections Officer Fred Ford, and Defendant Simonds—which were sworn to under penalty of perjury—support this asserted statement of material fact.  (Dkt. No. 43, Attach. 2 at 6-11.)

[6]      Defendants continue to cite to Dkt. No. 43, Attach. 1 at 6.  (Dkt. No. 43, Attach. 8 at ¶ 2.) For the reasons set forth in note 5, the Court finds other support in the record for this asserted fact.

[7]      Defendants continue to cite to Dkt. No. 43, Attach. 1 at 6.  (Dkt. No. 43, Attach. 8 at ¶ 3.) For the reasons set forth in note 5, the Court finds other support in the record for this asserted fact.

6.      Plaintiff was evaluated by Nurse Balcom.  Once Plaintiff was cleared by the nurse, he was escorted to the shower area and decontaminated.

7.      After decontamination, Plaintiff was taken back to holding cell B-104 until his cell was cleaned, then he was returned to his cell.

8.      Plaintiff filed a grievance regarding the incident.  Plaintiff "signed off" on his grievance.  However, Plaintiff alleges that he signed off because Defendants Biggar and Goff told him that his chances of getting transferred to Otsego County Jail were increased if he signed off.

9.      Defendants Biggar and Goff refute that they made any statement to Plaintiff about a transfer to Otsego County Jail in relation to signing off on his grievance.[8]

### D.      Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.      Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert the following five arguments: (1) Plaintiff's excessive force claim must fail as a matter of law because the force used was reasonable; (2) Plaintiff's deliberate medical indifference claim must fail as legally insufficient; (3) Plaintiff's retaliation claim against Defendants Biggar and Goff should be dismissed as legally deficient; (4) in the alternative, Plaintiff's claims are barred by the doctrine of qualified immunity; and (5) Plaintiff's claims fail as a matter of law because Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 43, Attach. 6 [Defs.' Mem. of Law].)

---

[8]      The Court notes that Defendants cite Defendant Goff's statement in support of this asserted fact.  (Dkt. No. 43, Attach. 8 at ¶ 10.)  However, the statement from Defendant Goff, is neither taken before a notary public nor sworn to under penalty of perjury pursuant to 28 U.S.C. § 1746.  (Dkt. No. 43, Attach. 5 at 7.)  As a result, Defendant Goff's statement, will not be considered by the Court because in its current form, it is inadmissible hearsay for the reasons set forth above in note 5.  However, the sworn declaration of Defendant Biggar supports this asserted statement of material fact.  (Dkt. No. 43, Attach. 5 at 8.)

First, Defendants argue that Plaintiff cannot show that Defendants Simonds and Bene's use of OC spray was excessive where Plaintiff disobeyed lawful commands to turn over his blankets and to get on the ground. (*Id*. at 5-7.) Moreover, Defendants argue that the force used was reasonable because it was in the context of a good faith effort to restore control and discipline to the facility. (*Id*.)

Second, Defendants argue that Plaintiff cannot establish the subjective element of his medical indifference claim because there were only approximately fifteen to twenty minutes between the time that the OC spray was administered and when Plaintiff was decontaminated. (*Id*. at 7-8.) Defendants argue that when Plaintiff's decontamination began, Defendant Simonds's "obligation to the Plaintiff" ended. (*Id*.)

Third, Defendants argue that Defendants Biggar and Goff did not present Plaintiff with the requirement that he sign off on his grievance or forgo a transfer to Otsego County Correctional Facility. (*Id*. at 8-10.) Defendants argue that Plaintiff's retaliation claim is based on conclusory statements without independent proof, and thus, should fail. (*Id*.) In addition, Defendants argue that there is no evidence that Defendants Biggar and Goff's alleged adverse action deterred Plaintiff from continuing to file grievances and lawsuits. (*Id*.)

Fourth, Defendants argue that they are entitled to qualified immunity. (*Id*. at 10-12.) More specifically, Defendants argue that their action—administering OC spray—was objectively reasonable and Defendants Simonds and Bene did not violate a clearly established constitutional right where they warned Plaintiff before application of the OC spray and he refused to obey Defendants' commands. (*Id*.) In addition, Defendants argue that they are entitled to qualified immunity on Plaintiff's other causes of action because there is no showing of violation of

Plaintiff's rights and Plaintiff's right to be free from retaliation "was never clearly established." (*Id*.)

Fifth, Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. (*Id*. at 12-13.) Defendants argue that Plaintiff's administrative remedies included submission to the Citizen's Policy and Complaint Review Council, but that Plaintiff failed to do so. (*Id*.)

### 2.     Plaintiff's Opposition

Generally, in opposition to Defendants' motion, Plaintiff argues that he was a pre-trial detainee in Delaware Correctional Facility at the time of the incident and had not been "a problem" in any other institutions. (Dkt. No. 48.) Plaintiff argues that he was ordered to exchange his blanket and that in response he explained to the corrections officer that he had just exchanged his blanket, but he was not violent or threatening. (*Id*.) Plaintiff acknowledged that he refused an order but argues that disobeying an order is "not a good reason to spray an inmate directly in the eyes and left for an hour before decontamination." (*Id*.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Standard Governing A Motion For Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[9] As for the materiality requirement, a dispute of fact is

---

[9]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ.

P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute–even if that non-

movant is proceeding *pro se*.[10]  (This is because the Court extends special solicitude to the *pro se*

litigant largely by ensuring that he or she has received notice of the consequences of failing to

properly respond to the motion for summary judgment.)[11]  As has often been recognized by both

the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's

procedural rules.[12]

---

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[10]   *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[11]   *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[12]   *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[13]–even when the non-movant was proceeding *pro se*.[14]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[15] Stated another way, when a non-movant fails to oppose a legal argument

---

[13]     Among other things, Local Rule 56.1 (previously Local Rule 7.1[a][3]) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1.

[14]     *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[15]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1[b][3]); *Devito v.*

asserted by a movant, the movant may succeed on the argument by showing that the argument

possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See*

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested therein

. . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30,

2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at

*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.    Legal Standard Governing Excessive Force Under the Eighth Amendment[16]

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the

alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . .

[had] a sufficiently culpable state of mind.'"  *Torres v. City of New York*, 17-CV-6604, 2019 WL

---

*Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004)
(McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude
expert testimony as "a concession by plaintiff that the court should exclude [the expert's]
testimony" on that ground).

[16]    The Court notes that Defendants indicate that Plaintiff was "a post arrest and post
disposition prisoner when he entered the Delaware county Correctional Facility."  (Dkt. No. 43,
Attach. 6 at 6.)  However, Plaintiff states that he was a pre-trial detainee at the time of the
incidents alleged in the Complaint.  (Dkt. No. 48 at 1.)  As the Court noted in its Decision and
Order dated January 13, 2021, it remains "unclear whether some of [P]laintiff's claims arise
under the Eighth or Fourteenth Amendment."  (Dkt. No. 8 at 6.)  If Plaintiff was a pre-trial
detainee at the time of the alleged incident on April 17, 2020, Plaintiff's excessive force claim
would be pursuant to the Fourteenth Amendment.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir.
2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed
by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual
Punishments Clause of the Eighth Amendment.").  "[A] pretrial detainee must show only that the
force purposely or knowingly used against him was objectively unreasonable."  *Kingsley v.
Hendrickson*, 576 U.S. 389, 396-97 (2015).  "[O]bjective reasonableness turns on the facts and
circumstances of each particular case.  A court must make this determination from the
perspective of a reasonable officer on the scene, including what the officer knew at the time, not
with the 20/20 vision of hindsight."  *Kingsley*, 576 U.S. at 397 (citation and quotation marks
omitted).

7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (alterations in original)), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019).

"The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks omitted). The Court, in assessing this component, must determine whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Wright*, 554 F.3d at 268 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

As for the subjective element, that "component of the claim requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Id.* (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). "When prison officials are accused of using excessive force, the 'wantonness' issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). Factors considered at this step include "the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Castro v. City of New York*, 16-CV-8147, 2020 WL 6782000, at *10 (S.D.N.Y. Nov. 18, 2020) (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)). In short, "determining whether officers used *excessive* force necessarily turns on the need for the force used." *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016) (emphasis in original). Given this naturally fact-intensive inquiry, while there are situations where summary judgment dismissing such a claim for relief is

proper, *see, e.g.*, *Torres*, 2019 WL 4784756, at *4-5, *Lebron v. Mrzyglod*, 14-CV-10290, 2019

WL 3239850, at *14-15 (S.D.N.Y. July 18, 2019), determinations in this context are usually left

for the jury to decide, *Thompson v. Booth*, 16-CV-3477, 2021 WL 918708, at *6 (S.D.N.Y. Mar.

10, 2021).

### C.    Legal Standard Governing Deliberate Indifference to Serious Medical Needs Under the Eighth Amendment[17]

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an

inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (quoting

*Helling v. McKinney*, 509 U.S. 25, 25 (1993)).  Within that framework, "[t]he Cruel and Unusual

Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure

that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir.

2006); *accord, Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  However, "[b]ecause society does

not expect that prisoners will have unqualified access to health care, deliberate indifference to

medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-04).  In this context, a

---

[17]    As set forth in note 16, if Plaintiff was a pre-trial detainee at the time of the incident on April 17, 2020, his deliberate indifference to serious medical needs claim would be pursuant to the Fourteenth Amendment.  "[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019).  "Importantly, these elements differ from deliberate indifference claims arising under the Eighth Amendment . . . . [in that] a plaintiff bringing a claim based on the Fourteenth Amendment [is not required to] establish the officer's subjective intent." *Ross v. Willis*, 16-CV-6704, 2021 WL 3500163, at *18 (S.D.N.Y. Aug. 9, 2021) (citing *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (holding that "the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm.")).

prison official violates the Eighth Amendment only when two requirements are satisfied. *Farmer*, 511 U.S. at 834.

### 1.    Objective Requirement–Serious Medical Needs

"The first requirement is objective: the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Salahuddin*, 467 F.3d at 279 (citation and internal quotation marks omitted); *accord, Farmer*, 511 U.S. at 834.  Evaluation of the objective prong involves two inquiries: (1) "whether the prisoner was actually deprived of adequate medical care," and (2) "whether the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 279-80.

With regard to the first inquiry, because a prison official need only provide "reasonable care," one who acts reasonably in response to an inmate's health risk "cannot be found liable under the Cruel and Unusual Punishments clause." *Id.* at 279-80 (quoting *Farmer*, 511 U.S. at 847).  "The word 'adequate' reflects the reality that '[p]rison officials are not obligated to provide inmates with whatever care the inmates desire.'" *Banks v. Annucci*, 48 F. Supp. 3d 394, 408-09 (N.D.N.Y. 2014) (Hurd, J.) (quoting *Jones v. Westchester Cnty. Dept. of Corrs. Med. Dept.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008)).

With regard to the second inquiry, determining whether the alleged inadequacy was "sufficiently serious" involves an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280 (citation omitted).  If the unreasonable medical care alleged was a "failure to provide any treatment" for the inmate's medical condition, courts examine whether the condition itself is sufficiently serious. *Id.*; *see also Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003) ("There is no need to distinguish between a prisoner's underlying 'serious medical condition'

and the circumstances of his 'serious medical need' when the prisoner alleges that prison officials have failed to provide general treatment for his medical condition.") (footnote omitted). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin*, 467 F.3d at 280 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *accord, Rodriguez v. Manenti*, 606 F. App'x 25, 26 (2d Cir. 2015) (summary order); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("Objectively, the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists.") (citation omitted). "A finding of a serious medical need 'is necessarily contextual and fact-specific,' and thus 'must be tailored to the specific circumstances of each case.'" *Shenk v. Cattaraugus Cnty.*, 305 F. App'x 751, 753 (2d Cir. 2009) (summary order) (quoting *Smith*, 316 F.3d at 185).

However, "[i]n cases where the inadequacy is in the medical treatment given," as opposed to a complete absence of treatment, "the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than' [the inmate's medical condition]." *Id.* (quoting *Smith*, 316 F.3d at 185). "In other words, the Court asks 'whether, from an objective standpoint, the temporary deprivation was sufficiently harmful to establish a constitutional violation.'" *Kidkarndee v. Koenigsmann*, 12-CV-0502, 2014 WL 1239319, at *14 (N.D.N.Y. Mar. 25, 2014) (Suddaby, J., adopting Report-Recommendation of Hummel, M.J.) (quoting *Frank v. Cnty. of Ontario*, 884 F. Supp. 2d 11, 19 (W.D.N.Y. 2012)).

## 2.    Subjective Requirement–Deliberate Indifference

"The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *accord, Daniels v. Williams*, 474 U.S. 327, 331-33 (1986) (explaining that "injuries inflicted by governmental negligence are not addressed by the United States Constitution"). "[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence," *Farmer*, 511 U.S. at 835, equivalent to "subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280; *Smith*, 316 F.3d at 184.  "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280; *accord, Farmer*, 511 U.S. at 837-38 ("An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis.").  Because this inquiry is subjective, "[p]rison officials may . . . introduce proof that they were not so aware, such as testimony that 'they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'" *Salahuddin*, 467 F.3d at 280 (quoting *Farmer*, 511 U.S. at 844). However, "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).  "Whether a course of treatment was the product of

sound medical judgment, negligence, or deliberate indifference depends on the facts of the case."
*Chance*, 143 F.3d at 703.

### D.    Standard Governing Claims of Retaliation Pursuant to the First Amendment

"To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a prisoner

must demonstrate: (1) that the speech or conduct at issue was protected, (2) that the defendant

took adverse action against the plaintiff, and (3) that there was a causal connection between the

protected conduct and the adverse action."  *Vidal v. Valentin*, 16-CV-5745, 2019 WL 3219442,

at \*6 (S.D.N.Y. July 17, 2019); *see also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).  A

claimant meets the first element by demonstrating that he filed a grievance, which is a

"constitutionally protected activity." *Davis*, 320 F.3d at 352-53; *see also Vidal*, 2019 WL

3219442, at \*6 (explaining it "is well supported by case law" that the submission of a grievance

constitutes a protected activity) (collecting cases); *Smith v. Hash*, 904-CV-0074, 2006 WL

2806464, at \*6 (N.D.N.Y. Sept. 28, 2006) (Kahn, J.) ("Smith's filing of a grievance was clearly

an assertion of a constitutional right protected by the First Amendment").  A claimant can meet

the second element by demonstrating that he was subject to "retaliatory conduct that would deter

a similarly situated individual of ordinary firmness from exercising constitutional rights."  *Gill v.

Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *see also Williams v. City of New York*, 19-CV-

3347, 2022 WL 130409, at \*22 (S.D.N.Y. Jan. 14, 2022) (quoting *Smith v. Maypes-Rhynders*,

07-CV-11241, 2009 WL 874439, at \*4 (S.D.N.Y. Mar. 31, 2009)) ("Whether an action is

'sufficiently adverse to deter someone of ordinary firmness from exercising his rights is a

question of fact.'").  Finally, "[i]n considering whether a causal connection exists, a court may

infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of

the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary

record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Williams*, 2022 WL 130409, at *24; *see also Speaks v. Saeed*, 14-CV-6826, 2022 WL 541767, at *8 (E.D.N.Y. Feb. 23, 2022).

      **E.**    **Exhaustion**

      The PLRA requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo*, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. *Id*. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted).

      Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court of the United States has held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in *Hemphill v. New York*, 380 F.3d 680,

686 (2d Cir. 2004), is no longer consistent with the statutory requirements of the PLRA.

*Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).[18]

Although *Ross* eliminates the "special circumstances" exception, courts must still

consider the PLRA's "textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.

Under this exception, courts must determine whether administrative remedies were "available" to

a prisoner.  *Id*.  The Supreme Court identified three circumstances where administrative remedies

may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when

(despite what regulations or guidance materials may promise) it operates as a simple dead end—

with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id*. at

1859 (citing *Booth v. Churner*, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme

might be so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Lastly,

administrative remedies are unavailable where "prison administrators thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*.

at 1860.

## III.    ANALYSIS

After carefully considering the matter, I recommend that the Court deny Defendants'

motion for summary judgment to the extent it seeks dismissal of Plaintiff's excessive force and

deliberate indifference to medical needs claims and grant Defendants' motion for summary

judgment to the extent it seeks dismissal of Plaintiff's retaliation claim.

---

[18]       In *Williams v. Priatno*, the Second Circuit debated *Ross*' effect on *Hemphill*'s estoppel
exception.  *See Williams*, 829 F.3d at 123.  The Second Circuit in *Williams* stated that "*Ross*
largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context
of whether administrative remedies were actually available to the aggrieved inmate."  *Id*. (citing
*Ross*, 136 S.Ct. at 1858-59).

A.    **Excessive Force Claim**

"The use of pepper spray 'constitutes a significant degree of force' and can in certain cases form the basis of a constitutional violation.'"  *Ross v. Willis*, 16-CV-6704, 2021 WL 3500163, at *10 (S.D.N.Y. Aug. 9, 2021) (quoting *Quinones v. Rollison*, 18-CV-1170, 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020)); *see Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010) ("Unquestionably, infliction of pepper spray . . . has a variety of incapacitating and painful effects[.]").

Although it remains unclear whether Plaintiff's excessive force claim is pursuant to the Eighth or Fourteenth Amendment, I recommend that the Court deny Defendants' motion—which only relates to the objective component—with respect to this claim because a reasonable factfinder could conclude that Defendants Simonds and Bene's use of OC spray was objectively unreasonable and hence an excessive use of force pursuant to either the Eighth or Fourteenth Amendments for the following four reasons.

First, a reasonable jury could conclude that Plaintiff did not present a threat to the Delaware employees, other inmates, or himself.  Plaintiff's verified Complaint attests that Plaintiff was "no[t a] threat in any kind of way" and that he communicated to Defendants that he was not being disruptive or a threat to any staff.  (Dkt. No. 1 at 5.)  Moreover, Plaintiff swore under penalty of perjury, that after he was able to "wash off the spray" he was brought back to his cell, he was not placed on administrative segregation, nor were any other restraints placed on him, which are the usual practice "if the inmate was [deemed] a threat."  (Dkt. No. 1 at 7.) Defendants and the other Delaware correction officer employees have not averred whether Plaintiff was perceived as a threat before Defendants Simonds and Bene administered OC spray. (Dkt. No. 43, Attach. 2 at 6-11; *but see* Dkt. No. 43, Attach. 2 at 10 [referring to Plaintiff's

movements as "erratic" and stating that he was "throwing his arms and blankets around in his cell"].)

Moreover, Plaintiff's verified Complaint swears under penalty of perjury that, Defendant Simonds directed Plaintiff to get on the ground twice and Plaintiff remained laying on his bed. (Dkt. No. 1 at 5-6.) A reasonable jury could conclude that Plaintiff's continued position—laying on his bed—was not an act signifying active resistance. *See Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015) (denying summary judgment on excessive force claim where the plaintiff refused to put her hands behind her back to be handcuffed because this "non-threatening form of resistance" was "only one factor to be considered"); *Ross v. Willis*, 2021 WL 3500163, at *11 (finding that a reasonable jury could conclude that it "was not an act of or signifying actively resistance" where the plaintiff "had 'pulled away' a single time when officer(s) grabbed him").

Second, there is a genuine dispute of material fact as to the force used against Plaintiff in addition to Defendants Simonds and Bene's use of OC spray. Plaintiff's verified Complaint attests that—in addition to Defendants Simonds and Bene's use of OC spray—Plaintiff was "thrown off [his] bunk to the floor . . . kneed and kicked in the sides while Officer Cammer . . . put his knee into [Plaintiff's] back with [over 300 pounds of] weight on" Plaintiff. (*Id.* at 6.) Plaintiff also swore under penalty of perjury that handcuffs were placed on him so tightly that they caused lacerations and stopped the blood flow to his hands. (*Id.*) Defendants' motion focuses solely on Defendant Simonds and Bene's deployment of OC spray. (*See generally* Dkt. No. 43, Attach. 6.)

Third, there is a material issue of fact as to the amount of OC spray used, which may enhance Plaintiff's excessive force claim. Defendants contend that Defendants Simonds and

Bene each only administered one-second bursts of OC spray. (Dkt. No. 43, Attach. 2 at 6, 8-10.) However, Plaintiff swore under penalty of perjury that Defendant Simonds sprayed him within less than six inches from Plaintiff's face and "emptied his can into [Plaintiff's] eyes and mouth" and then Defendant Bene "also pulled his can and also emptied it into [Plaintiff's] face." (*Id.* at 5-6); *see Tracy*, 623 F.3d at 98 (denying summary judgment in part based on a factual dispute regarding the distance from which the pepper spray was deployed) *Ross v. Willis*, 2021 WL 3500163, at *12 (same); *Lewis v. Clarkstown Police Dep't*, 11-CV-2487, 2014 WL 1364934, at *5 (S.D.N.Y. Mar. 31, 2014), *adhered to on reconsideration*, 2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014) (denying summary judgment in part based on a factual dispute regarding the amount of OC gel that was used).

Fourth, Plaintiff's alleged injuries are sufficient to sustain an excessive force claim. The case law cautions wariness about granting summary judgment on this basis, on the ground that, if injuries of "limited duration" were enough to defeat an excessive force claim, "police and corrections officers would essentially be able to utilize pepper spray and similar chemical agents with impunity." *Lewis*, 2014 WL 1364934, at *6. A plaintiff need not have sought medical attention to support an excessive force claim. *See Hodge v. Village of Southampton*, 838 F. Supp. 2d 67, 77 (E.D.N.Y. 2012) ("The fact that plaintiff did not require substantial medical treatment at the hospital following the incident does not necessarily mean that [defendant] is entitled to summary judgment."). Moreover, "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987). Here, Plaintiff swore under penalty of perjury that (1) he felt burning in his eyes, (2) on April 18, 2020, his eyes were practically swollen shut which made it difficult for him to see, (3) he felt "extreme pain from [his] shoulder and sides," (4) he suffered

blurred vision, and (5) to the date of his verified Complaint, he still had "problems seeing out of [his] left eye." (*Id.* at 7-8.) Further, the fact that Plaintiff was given a decontamination shower, does not entitle Defendants to summary judgment. *Ross v. Willis*, 2021 WL 3500163, at *12.

As a result, I recommend that the Court deny Defendants' motion for summary judgment on Plaintiff's excessive force claim—pursuant to the Eighth or Fourteenth Amendment—because genuine issues of material fact remain regarding the force used and the circumstances surrounding the use of force. *See Tracy*, 623 F.3d at 98 ("[A] reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant . . . offering no further active resistance constituted an unreasonable use of force[.]"); *Lewis*, 2014 WL 1364934 at *6 (S.D.N.Y. Mar. 31, 2014) (denying summary judgment where the parties disputed what triggered the plaintiff's behavior in the holding cell and the amount of pepper spray used).[19]

## B.    Deliberate Indifference to Medical Care Claim

For purposes of this motion, the Court assumes—without deciding—that no genuine issue of material fact exists regarding the objective requirement of Plaintiff's deliberate indifference to medical care claim.[20]  (*See* Dkt. No. 43, Attach. 6 at 7-8 [challenging only

---

[19]    The Court notes that Defendants make an undeveloped argument that Plaintiff's failure to intervene claims should also be dismissed.  (Dkt. No. 43, Attach. 7 at ¶¶ 7-8.)  Defendants appear to argue that Defendants Simonds and Bene cannot be liable for failing to intervene to prevent the alleged unauthorized use of force because Plaintiff asserts liability under a theory of direct participation.  (*Id.*)  However, Plaintiff may hold Defendants Simonds and Bene liable for one cause of action or the other.  *Franco v. City of Syracuse*, 16-CV-0634, 2019 WL 1410348, at *4 (N.D.N.Y. Mar. 28, 2019) (Scullin, J.) (permitting the plaintiff's excessive force and, in the alternative, failure to intervene claims to proceed beyond the summary judgment stage, even where those claims are inconsistent); *Johnson v. City of Syracuse*, 16-CV-0622, 2018 WL 9989657, at *6 (N.D.N.Y Apr. 11, 2018) (Sannes, J.) (same).

[20]    The Court notes that, to the extent Plaintiff was a pre-trial detainee at the time of the subject incident on April 17, 2020, this would end the inquiry because, as set forth in note 17, a claim for deliberate indifference to medical needs pursuant to the Fourteenth Amendment does not require establishment of the officer's subjective intent.  The Court also notes that courts in this circuit have held that "temporary discomfort caused by pepper spray or mace does not

whether the Defendant Simonds's actions "rise to the level required to satisfy deliberate

indifference to serious medical needs."].)

      After Defendants Simonds and Bene deployed OC spray, the parties agree that Plaintiff

was eventually taken to a decontamination shower.  (Dkt. No. 1 at 6-7; Dkt. No. 43, Attach. 2 at

6-7, 9-10.)  However, there is a dispute regarding the lapse of time between Defendants Simonds

and Bene deploying OC spray and Plaintiff's decontamination shower.

---

constitute a 'sufficiently serious' injury within the meaning of deliberate indifference." *Ross v. Willis*, 2021 WL 3500163, at *17-18; *see Rodriguez v. Cohall*, 21-CV-1810, 2022 WL 1228411, at *4 (S.D.N.Y. Apr. 26, 2022) (dismissing the plaintiff's deliberate indifference to medical care claim where the plaintiff alleged that "he was completely denied medical care following his exposure to chemical agents" but "failed to allege that he suffered an injury that was sufficiently serious" despite alleging that he experienced "breathing difficulties, chest pains, blurry vision, dizziness [sic], skin burning/irritation, trauma, [and] anxiety."); *Williams v. City of New York*, 19-CV-3347, 2022 WL 130409, at *26 (S.D.N.Y. Jan. 14, 2022) (quoting *Ross v. Willis*, 2021 WL 3500163, at *17-18) (granting summary judgment for the defendants on the plaintiff's deliberate indifference to medical needs claim where the plaintiff did not allege any serious injury and the records demonstrated that he was not suffering from physical ailments that may "produce death, degeneration, or extreme pain."); *Taylor v. Quayyum*, 16-CV-1143, 2021 WL 6065743, at *6 (S.D.N.Y. Dec. 21, 2021) (finding that the plaintiff did not "allege an injury that [wa]s sufficiently serious to state a claim for deliberate indifference to medical needs" where the plaintiff's "alleged injuries include[d] 'rest[r]icted breathing, caoughing [sic], sneezing, burning of eyes and throat, skin irritation [and] mental anguish."); *Johnson v. Schiff*, 17-CV-8000, 2019 WL 4688542, at *14 (S.D.N.Y. Sept. 26, 2019) (finding that the plaintiff failed to allege facts plausibly suggesting the objective element of a deliberate indifference to medical needs claim where he did not allege that he suffered permanent effects or serious injury from the pepper spray); *Beauvoir v. Falco*, 345 F. Supp. 3d 350, 365-67 (S.D.N.Y. 2018) (finding that the plaintiff's injuries were minor where he was sprayed with pepper spray but did not complain of suffering any immediate pain or injury right after the incident and the medical records indicated that his vision loss and subsequent surgery were neither caused nor significantly exacerbated by the pepper spray); *Wright v. Trapasso*, 15-CV-4428, 2018 WL 4688940, at *11 (E.D.N.Y. Sept. 28, 2018) (holding objective element not satisfied where the plaintiff did "not claim any lasting physical injuries from the pepper spray"); *Holmes v. City of New York*, 17-CV-3874, 2018 WL 4211311, at *7 (S.D.N.Y. Sept. 4, 2018) (holding objective element not satisfied where, "[w]hile undoubtedly uncomfortable and painful, the[ ] temporary effects of chemical spray are not serious medical needs because they do not rise to the level of producing death, degeneration, or extreme pain" (citation omitted)); *Lewis*, 2014 WL 1364934, at *7 ("[C]ourts within this Circuit have previously found that the temporary discomfort caused by pepper spray or mace does not constitute a 'sufficiently serious' injury.").

Defendants argue—without citation to any record evidence—that "this incident occurred at approximately 2015, the decontamination process began at 2035.  Thus, it was only 15 or 20 minutes from the start of the incident to the start of decontamination."  (Dkt. No. 43, Attach. 6 at 8.)  A review of Defendant Simonds's statement that was sworn to under penalty of perjury indicates that Plaintiff was evaluated by the nurse at approximately 7:31 p.m., and once cleared by the nurse, he was escorted to the shower area and properly decontaminated.  (Dkt. No. 43, Attach. 2 at 10.)  However, Defendants do not cite to any admissible evidence indicating the length of time that the nurse's evaluation lasted or when Plaintiff's decontamination shower began.[21]  (*See generally* Dkt. No. 43.)

Plaintiff attests under penalty of perjury that after being sprayed, he was strapped into a chair for approximately forty-five minutes, unable to move or "do anything but suffer from the burning in [his] eyes and face" while "begging [Defendant Simonds] to please let [him] wash the spray off."  (Dkt. No. 1 at 6-7.)  Plaintiff swore under penalty of perjury that Defendant Simonds laughed at him and that "from the time [he] was sprayed to the time [he] was allowed to wash it off was approximately well over an hour."  (*Id.* at 7.)

Drawing all reasonable inferences in Plaintiff's favor, an issue of fact remains for the jury to determine whether Defendant Simonds was aware, or should have been aware, that failing to provide a decontamination shower in a timely fashion would pose a substantial risk to Plaintiff's health.[22]  *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019).  Whether Defendant Simonds knowingly ignored Plaintiff's pleas, or should have known not to ignore Plaintiff, is a question of

---

[21]    The Court notes further that Defendants also fail to include any medical records in support of their motion.

[22]    As set forth above in notes 17 and 20, this issue of fact is only relevant if Plaintiff's deliberate indifference to medical needs claim is pursuant to the Eighth Amendment.

fact that should be reserved for the jury.[23]  *Charles*, 925 F.3d at 87; *see Hong v. Aigle*, 18-CV-8110, 2020 WL 2836309, at *5 (S.D.N.Y. June 1, 2020) (finding that the plaintiff had alleged facts plausibly suggesting a deliberate indifference to medical care claim where the plaintiff alleged, *inter alia*, that he had been sprayed with pepper spray in his eyes and he told correction officers that he could not breathe and asked to be put in mechanical restraints so that he could be brought to seek medical care, but was ignored).

As a result, I recommend that the Court deny Defendants' motion for summary judgment arguing that Plaintiff's deliberate indifference to medical needs claim is legally insufficient.

## C.    Retaliation Claim

There is no dispute that Plaintiff engaged in protected speech by the filing of his grievance.  (Dkt. No. 1 at 8; Dkt. No. 43, Attach. 5 at 2-8; Dkt. No. 43, Attach. 6 at 8-10); *see Davis*, 320 F.3d at 352-53 (holding that a claimant meets the first element by demonstrating that he filed a grievance, which is a "constitutionally protected activity.").

With respect to the second element of a retaliation claim, courts in this circuit have held that the transfer of an inmate to another prison facility in response to that inmate's exercise of a protected right under the Constitution may constitute the necessary adverse action to state an actionable retaliation claim.  *Garcia v. Semple*, 18-CV-1226, 2019 WL 5597771, at *18 (D. Conn. Oct. 30, 2019) (citing *Smith v. Levine*, 510 F. App'x 17, 21 (2d Cir. 2013) ("We had stated, at least as early as 1998, that, while '[a] prisoner has no liberty interest in remaining at a particular correctional facility,' prison authorities 'may not transfer an inmate in retaliation for the exercise of constitutionally protected rights.'")).

---

[23]    The Court also notes that Defendants did not include any testimony from Defendant Simonds he knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.

However, courts have concluded that threats of a transfer "cannot be objectively viewed as deterring a person of ordinary firmness from exercising First Amendment rights." *Lunney v. Brureton*, 2007 WL 1544629, at *17-18 (S.D.N.Y. May 29, 2007); *see Hill v. Laird*, 2014 WL 1315226, at *9 (E.D.N.Y. Mar. 31, 2014) (finding that the officer's "vague threat to transfer Plaintiff to an unspecific location . . . lacks the specificity and directness to constitute an adverse action.").

In addition, Defendants Biggar and Goff's statements—that it would be in Plaintiff's best interest to sign off on the grievance and that inmates were being transferred to Otsego County and Plaintiff would not be one of the transfers if he did not sign off—is far more benign than many threats that courts in the Second Circuit have considered insufficient to constitute an adverse action for purposes of a retaliation claim. *See Terry v. Hulse*, 16-CV-0252, 2018 WL 4682784, at *11 (S.D.N.Y. Sept. 28, 2018) (dismissing a First Amendment retaliation claim because the alleged threat was insufficiently specific and direct even where corrections officers stated "they were gonna kill" the plaintiff); *see also Albritton v. Morris*, 13-CV-3708, 2016 WL 1267799, at *18 (S.D.N.Y. Mar. 30, 2016) (dismissing First Amendment retaliation claims because an officer's statements to a plaintiff that his "grievances were unlikely to succeed" and that he "would handle things 'his way'" were insufficiently specific or direct); *Barrington v. New York*, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011) (granting summary judgment in favor of a defendant who told an inmate that "'me and my boys . . . going to get you' while brandishing a copy of a grievance"); *Bilal v. N.Y. State Dep't of Corr.*, 09-CV-8433, 2010 WL 2506988, at *16 (S.D.N.Y. June 21, 2010) ("Neither [the defendant's] comment . . . that [the plaintiff] was 'lucky' because correction officers 'usually fuck people up for writing a bunch of bullshit grievances' nor his . . . comment that '[y]ou're not the only one who can write. I'm willing to bet

you'll break or get broke up,' was a 'direct' nor 'specific' threat." (alterations and record

citations omitted)), *aff'd sub nom. Bilal v. White*, 494 F. App'x 143 (2d Cir. 2012); *Mateo v.*

*Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) ("The opacity of [the defendant's] threats to

[the plaintiff]—that [the plaintiff] should 'wait till he put his hands on me,' and that 'one day he

and I will party,'—softens the deterrent effect considerably.").

As a result, I recommend that the Court grant Defendant's motion for summary judgment

with respect to Plaintiff's retaliation claim because Plaintiff fails to establish that Defendants

Biggar and Goff took an adverse action against him.[24]

### D.    Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the

official violated a statutory or constitutional right that was clearly established at the time of the

challenged conduct." *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017) (citing

*Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  In other words, "[an] officer is entitled to

---

[24]    Although I make this recommendation, I reject two of Defendants' arguments with
respect to Plaintiff's retaliation claim.  First, Defendants appear to argue that because Defendants
Biggar and Goff deny making the alleged statements to Plaintiff, and Plaintiff presents no
independent proof—other than his own sworn statement—that the claim must fail.  (Dkt. No. 43,
Attach. 6 at 9-10.)  However, in deciding a motion for summary judgment, "[t]he role of the
court is not to resolve disputed issues of fact but to assess whether there are any factual issues to
be tried."  *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).
"'Credibility determinations, the weighing of the evidence, and the drawing of legitimate
inferences from the facts are jury functions, not those of a judge.'"  *Barrows v. Seneca Foods
Corp.*, 512 F. App'x 115, 117 (2d Cir. 2013) (quoting *Redd v. New York Div. of Parole*, 678 F.3d
116, 174 (2d Cir. 2012)).  Second, Defendants appear to argue that the Court should find that the
alleged statements were not an adverse action because they did not deter "Plaintiff from
continuing to file grievances or lawsuits."  (Dkt. No. 43, Attach. 6 at 9.)  However, "the fact that
an inmate has filed a lawsuit should not be taken to imply that the retaliatory conduct was not
sufficient to deter a person of ordinary firmness from exercising his or her rights."  *Vincent v.
Sitnewski*, 117 F. Supp. 3d 329, 336 (S.D.N.Y. 2015).  As the Second Circuit has explained, "that
a particular plaintiff . . . responded to retaliation with greater than 'ordinary firmness' does not
deprive him of a cause of action."  *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004).

qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008). When determining whether the right at issue is clearly established such that "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right," a court should ask "(1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful?" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Young v. City of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)) (internal alterations and quotation marks omitted).

With regard to the second question, the Second Circuit has explained that, to determine whether a right is clearly established, "we generally look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009)).

With regard to the first question, the Supreme Court has repeatedly admonished lower courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "[A] case directly on point" is not necessarily required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

"[I]t was well-established as of [April 2017,] that 'no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a[n] . . . unresisting

28

arrestee.'" *Ross v. Willis*, 2021 WL 3500163, at \*14 (citing *Tracy*, 623 F.3d at 99 n.5 (holding

that it was also well-established "that the use of entirely gratuitous force is unreasonable and

therefore excessive.")).

     Here, "[a]lthough [Plaintiff] was unrestrained and an inmate, he was confined to his cell,

lying [on his bunk] and, crediting [Plaintiff's] version of events, passive" albeit non-compliant

with the officers' commands. *Ross*, 2021 WL 3500163, at \*14. As set forth above in Part III.A.

of this Order and Report-Recommendation, there are factual disputes that bear on whether

Defendants Simonds and Bene's use of force was gratuitous here, including whether Plaintiff

resisted the officers.

     Instructively, a court in this circuit found that factual disputes about the cause of

Plaintiff's disruptive behavior in the holding cell and the amount of OC gel used precluded

summary judgment on qualified immunity grounds. *Lewis*, 2014 WL 1364934, at \*10; *see*

*Wiggan v. NYC Dep't of Corr.*, 12-CV-1405, 2014 WL 4631456, at \*2 (S.D.N.Y. Sept 16, 2014)

("a jury could find, in accordance with [p]laintiff's version of the events, that it was

unreasonable for [defendant] to have used pepper spray on [p]laintiff while [p]laintiff was locked

inside of his cell and neither physically resisting [defendant] nor posing an immediate threat.").

     As a result, I recommend that the Court deny Defendants' motion for summary judgment

seeking qualified immunity with respect to Plaintiff's excessive force claim.[25]

---

[25]    To the extent that the assigned District Judge adopts this recommendation, the availability of qualified immunity would remain an open issue in this case. At trial, Defendants would be at liberty to ask that, in the event of a verdict in favor of Plaintiff, the jury make factual findings germane to the existence of qualified immunity so as to enable a determination on a clear factual record as to whether the facts justified Defendants Simonds and Bene's use of a chemical agent. *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) (where factual disputes preclude "early disposition of the [qualified immunity] defense, the jury should decide these issues on special interrogatories").

Moreover, for the reasons set forth above in Part III.B. of this Order and Report-Recommendation, I find that a genuine issue of fact remains with respect to whether Plaintiff's constitutional rights were violated relative to his deliberate indifference to medical needs claim.[26]

With respect to Plaintiff's retaliation claim, which I recommend be dismissed for the reasons set forth in Part III.C. of this Order and Report-Recommendation, to the extent that the Court rejects that recommendation, I recommend that the Court deny Plaintiff's motion for summary judgment based on the doctrine of qualified immunity because the right to be free from retaliation was clearly defined at the time of the incident. *See Lewis v. Hanson*, 18-CV-0012, 2022 WL 991729, at *28 (N.D.N.Y. Mar. 31, 2022) (Kahn, J.) (citing *Burton v. Lynch*, 664 F. Supp. 2d 349, 368-69 (S.D.N.Y. 2009) ("[A] claim of government retaliation for the exercise of First Amendment rights . . . alleges a violation of a clearly established right.")) (denying the defendants' motion for summary judgment seeking dismissal of a retaliation claim based on the doctrine of qualified immunity "[b]ecause inmates have a clearly established right not to be retaliated against for exercise of First Amendment rights.")

### E.    Failure to Exhaust Administrative Remedies

For purposes of this motion, the Court will assume—without deciding—that Plaintiff did not exhaust his administrative remedies because Plaintiff acknowledged that he "signed off" on his grievance.[27]  (Dkt. No. 43, Attach. 5 at 2-6; Dkt. No. 1 at 8.)

---

[26]    "While a grant of summary judgment might still be appropriate if [Defendants] could establish the second prong of the qualified immunity inquiry—i.e., that the constitutional right in question was not 'clearly established' at the time of the violation—[with respect to Plaintiff's deliberate indifference to medical needs claim, Defendants] make no such argument before this Court, and, accordingly, [the Court] [need not] consider the issue in any detail." *Tracy*, 623 F.3d at 99 n.5.

[27]    However, the Court notes that Defendants failed to submit evidence in an admissible format—such as an affidavit from Delaware's records keeper or certified copies of their

Although Plaintiff did not respond to that portion of Defendants' motion that related to the failure to exhaust his administrative remedies, his verified Complaint alleges that administrative remedies were unavailable to him, given his claims of intimidation by Defendants Biggar and Goff. *Ross*, 136 S. Ct. at 1859-60.

If prison administrators "thwart" inmates from taking advantage of the grievance process through "machination, misrepresentation, or intimidation," the administrative remedies are "unavailable," and the inmate is excused from the exhaustion requirement, regardless of which "official" prevented plaintiff from filing the grievance. *Id.* at 1860. Consistent with this approach, courts in this circuit have concluded, that where an inmate plausibly alleges that his failure to file a grievance was due to threats of harm by facility staff, there exists a material question of fact as to whether the defendant officers may rely upon the inmate's non-exhaustion as an affirmative defense. *See, e.g., Hemphill*, 380 F.3d at 688 (remanding for determination of availability of administrative remedies where officer threatened to retaliate against the plaintiff if he filed a complaint); *Adams v. O'Hara*, 16-CV-0527, 2018 WL 5728040, at *6-7 (N.D.N.Y. July 24, 2018) (Baxter, M.J.) (recommending denial of the defendants' motion for summary judgment on exhaustion grounds where there existed a material question of fact regarding the availability of administrative remedies based on the plaintiff's allegations that he had been threatened with retaliation), *report and recommendation adopted*, 2018 WL 4590015 (N.D.N.Y. Sept. 25, 2018) (Suddaby, C.J.); *Morrison v. Hartman*, 07-CV-6633L, 2010 WL 811319, *3 (W.D.N.Y. Mar. 3, 2010) ("district courts in the Second Circuit have concluded that where an

---

records—to the Court for review, which would establish Plaintiff's failure to exhaust his administrative remedies. (*See generally* Dkt. No. 43.)

In addition, Defendants failed to set forth what full administrative review process—if any—was available to Plaintiff at Delaware that he failed to administratively exhaust.

inmate plausibly alleges that his failure to file a grievance was due to threats of physical harm by defendant officers, there exists a material question of fact as to whether the defendant officers may rely upon the inmate's non-exhaustion as an affirmative defense.").

I find that Plaintiff's allegations—which were sworn to under penalty of perjury—regarding Defendants Biggar and Goff's statements are, if barely, sufficiently "specific and clear" because they "relate[] directly to Plaintiff's . . . grievance against" Defendants Simonds and Bene. *White v. Westchester Cnty.*, 18-CV-0730, 2018 WL 6726555, at *7 (S.D.N.Y. Dec. 21, 2018). Moreover, Plaintiff alleges that he was (and still is) scared and felt unsafe at Delaware and signed off on the grievance in hopes that he would be transferred because of the threat. (Dkt. No. 1 at 8.)

Further, the Court notes that, Defendants have not offered any evidence suggesting that Plaintiff filed other grievances at Delaware before he was transferred, "which is consistent with the position that the grievance process was not available to him because of the threats . . . he alleges." *Decolines v. Hollenbeck*, 20-CV-1502, 2021 WL 5508317, at *4-5 (N.D.N.Y. June 15, 2021) (Baxter, M.J.), *report and recommendation adopted by* 2021 WL 4947118 (N.D.N.Y. Oct. 25, 2021) (D'Agostino, J.).

As a result, I recommend that the Court deny Defendants' motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies.[28]

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Defendants' motion for summary judgement (Dkt. No. 43) be **GRANTED** in so far as it seeks dismissal of Plaintiff's retaliation claim against Defendants

---

[28]    The Court further notes that Defendants focus solely on the question of whether Plaintiff completed exhaustion and entirely fail to address the question whether any exception to exhaustion applies. (Dkt. No. 43, Attach. 6 at 12-13.)

Biggar and Goff, and **<u>DENIED</u>** in so far as it seeks dismissal of Plaintiff's (1) excessive force

and failure to protect claims against Defendants Simonds and Bene, and (2) deliberate

indifference to medical needs claim against Defendant Simonds; and it is further respectfully

      **RECOMMENDED** that Defendants Biggar and Goff be **<u>TERMINATED</u>** from this

action; and it is further

      **ORDERED** that the Clerk of the Court shall amend the docket such that Defendant

"Simmonds" is changed to "Simonds"; and it is further

      **ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation

on the docket of this case and serve a copy upon the parties in accordance with the local rules.[29]

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14)

days within which to file written objections to the foregoing report. Such objections shall be

filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984

F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: May 11, 2022
       Binghamton, New York


                  Miroslav Lovric
                  U.S. Magistrate Judge

---

[29]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).